## No. 12,627.

PATRICK W. MULQUEENEY ET ALS. VS. JAMES SHAW ET ALS.

A stock subscription by which the corporation in the full exercise of its functions was organized can not be repudiated by some of the shareholders, and the corporation thrown into the hands of a receiver, merely and only on the ground taken by the dissatisfied shareholders that the subscription was illegal, the subscription having been approved by all of them, and the full amount of which the corporation retains.

The appointment of a receiver for a corporation will not be made with no allegations of mismanagement, improper application of funds or other acts of corporate maladministration, and only on the general allegation of the shareholders seeking the appointment, that they apprehend exposure in the future, if the corporation is not wound up, to liabilities not contemplated when they became shareholders. High on Receivers, Secs. 17, 11, 24, 288, 293.

APPEAL from the Civil District Court for the Parish of Orleans. King, J.

---

Carroll & Carroll and A. E. Blackmar for Plaintiffs, Appellants.

---

Chrétien & Suthon for the Excelsior Co-operative Association, Limited, and James Shaw and others, Defendants and Appellees.

---

Frank Zengel for Screwmen's Benevolent Association, Intervenor, Appellee.

---

Joel E. Prowell for Mrs. Margaret Dieck, widow of James Palmer, and Mrs. Elizabeth Regan, widow of James Duffy, Intervenors, Appellants.

Argued and submitted March 9, 1898.

Opinion handed down April 18, 1898.

Rehearing refused June 28, 1898.

The opinion of the court was delivered by

MILLER, J. The plaintiffs appeal from the judgment against them on their rule to appoint a receiver for the Excelsior Co-operative Association, and for an injunction to restrain any further action of the officers of the association.

For many years the Screwmen's Benevolent Association has existed in this city, incorporated in 1871, under the general law for the organization of charitable corporations. Revised Statutes, Sec. 677 et seq. In 1895 the Screwmen's Association conceived it to be their interest to promote the formation of a body corporate and twenty-one parties, all members of the Screwmen's Association, signed the act, incorporating them as the Excelsior Co-operative Association, with an authorized capital of ten thousand dollars, divided into shares of ten dollars each, the corporation to commence business when five thousand dollars of the capital was subscribed: the object of the new corporation was the execution of contracts for the loading and unloading of ships in this port, and we gather from the testimony, it was contemplated the work secured by the contracts of the Excelsior was to be performed by the members of the Screwmen's Association. We find in the record a paper signed by the president of the Screwmen's Benevolent Association, expressing its subscription to five hundred and fifty shares of the stock of the Excelsior; there are also entries in the books of that association stating its ownership of ten thousand dollars of the Excelsior, and it is put beyond all controversy that the ten thousand dollars was furnished with which the Excelsior has conducted its business, and it is in evidence that the dividends on the subscription have been paid and employment afforded by means of the Excelsior to the screwmen as contemplated when the subscription was made; it further appears that when this suit was brought the Excelsior had on hand eleven thousand or twelve thousand dollars, owed no debts, save its stock liability to the Screwmen's Association and contemplated the continuance of its business.

In this condition the present suit was brought by some of the twenty-one parties who became subscribers to that number of shares of the

Excelsior, praying that its affairs be put into the hands of a receiver, that the association be decreed not a corporation, and that its assets be divided. The grounds of the petition are, that the subscriptions to the capital stock were not obtained required as a condition precedent for going into the business of the corporation; that hence the association has no corporate capacity; that the petitioners only became aware recently of the illegality of the subscriptions, and of the fact the association had no corporate existence. The petition further avers that the president named in the charter is unfit, the grave misapprehension of law and fact under which, it is alleged, the association commenced business, and the responsibilities of the petitioners, different, it is charged, from those claimed and intended, lead to the fears of petitioners of embarrassment and trouble in the future, and they assert their right to a division of the assets of the association, and to the injunction and appointment of the receiver. The exception and answer negative the allegations in the petition; aver that the business of the association is prosperous, and, after paying dividends, has on hand a cash surplus, besides implements; the suit is charged to have been brought in bad faith, from selfish motives, arising from the failure of one of the plaintiffs to secure his re-election as secretary, and the respondents deny there is any occasion for the injunction, receiver or other relief sought by the petition. There is an intervention by the Screwmen's Benevolent Association, averring its ownership of five hundred and fifty shares of the stock of the Excelsior Company, and the solvency and prosperous business of that company; that the plaintiffs participated in the organization and all other acts of the Excelsior Company, are estopped from seeking and have no interest to demand the relief claimed in the petition, and defendants deny there is any cause for the injunction or appointment of the receiver. On the rule to appoint the receiver and for the injunction the organization of the Excelsior Association, the subscriptions to its stock, the modes and results of its business, and its financial condition, owing no debts, with no creditor, and with cash on hand in excess of that debt, were developed in the copious testimony we find in the record, and resulted in the judgment from which plaintiffs appeal denying the relief prayed by them and affirming the legality of the defendant's charter.

During the trial the plaintiffs excepted to the ruling of the court

against questions propounded by plaintiffs to show that the president of the Excelsior Association was of drinking habits. It is claimed the testimony should have been received under the allegation in the petition that the president was unfit by reason of his health and habits. We do not think that on this general allegation the court could make any decree, and if there were acts of misconduct or mismanagement on his part there should have been the specification of the acts. On these applications for receivers " the facts relied on for the relief should be distinctly and specifically set forth; " and again, " while fraudulent conduct or danger to the property is frequently the foundation for a receivership, it will not do to allege such fraud or information generally, and a bill containing only vague and general allegations presents no case for the appointment of a receiver." High on Receivers, Sec. 17. The discussion of the other bills to the exclusion of questions touching the authority of the president of the Screwmen's Benevolent Association to make the subscription is, in our view, useless. The books of that association, the testimony that the subscription was discussed at the corporate meetings, and the incontestible fact the amount subscribed was furnished, used and recognized by the Excelsior, by entries on their books and dividends received by the Screwmen's Association, remove the fact of the subscription and the authority by which it was made, whatever its effect, beyond the domain of controversy.

On the theory that the Excelsior Association is not a corporation, plaintiffs would be deemed simply owners in common of assets. On this view the usual remedies afforded by our Code for the division of property thus held must be deemed ample, without resort to the receivership, not granted even in chancery as between tenants in common of personal property, except, at least, in special cases. High on Receivers, Sec. 20.

The main ground of plaintiff's suit is that the Excelsior has no corporate existence, because of the alleged invalidity of the subscription to its stock by the Screwmen's Association, and in this connection we are referred to the general rule, that one corporation can not subscribe to the stock of another. The Screwmen's Association organized to assist its members, to that end was accustomed to rely on the investment of its surplus funds. The real purpose of the subscription was by means of the capital thereby furnished the Excelsior, to secure dividend and the no less impor-

tant object, obtain employment for the Screwmen in executing the contracts of the Excelsior Association. Our attention has been called to the decision of our predecessors, that a number of corporations can not unite to form another. Factors and Traders Insurance Company vs. New Harbor Protection Company *et als.*, 37 An. 233. There is no uniting in this case of two corporations. It admits of serious question whether a subscription by an organization of laborers to the stock of another corporation, created to secure contracts affording employment to laborers, and when the object of the subscription is to secure that employment for the laborers, members of the subscription corporation can be deemed *ultra vires* on its part. There are cases in which the subscription by one to the stock of another corporation is upheld, when the subscription contributes to the object for which the subscribing corporation is organized. Cook on Shareholders, Sec. 64, announces the general rule with its qualification. But irrespective of the question of the principle supposed to forbid this subscription, have these plaintiffs any basis to force a receivership and the winding up of the Excelsior, upon the other shareholders and on the Screwmen's Association, with its large interest in the controversy before us resisting the plaintiffs' demands? We find the subscription has resulted advantageously in dividends for the Screwmen's Association and employment for its members. We perceive no mismanagement or losses of its funds proved, or even charged. The Excelsior Association has in its treasury, after paying the dividends to the Screwmen, funds more than adequate to pay the entire amount the Screwmen's Association furnished. No complaint in respect to the subscription and the corporate capacity of the Excelsior is made by any one save plaintiff, and the election for its officers resulting in the displacement of one of the plaintiffs, quickly followed by the present suit, is not without influence in appreciating the basis on which the plaintiffs call for the winding up of the corporation. Two of the plaintiffs have been officers of the corporation, all of them participated in its formation; all knew and approved of the subscription and according to the testimony have shared in the benefits derived from the Excelsior as a source of the dividend and of employment for the screwmen. While defects of a radical character in organizing corporations may be deemed incapable of ratification, we do not think a subscription like that under consideration, and th

corporate capacity resting in part on that subscription, can be repudiated by parties concurring in obtaining the subscription, and who, for a length of time, have recognized and affirmed the corporation they now attack, and attack with a view to a receivership sought by one of the plaintiffs of funds applicable to satisfy the claim if urged, of the Screwmen's Association desiring no receivership and resisting plaintiffs' demand. The intervention of that association we think increases the force of the estoppel urged against plaintiffs by the other shareholders. The ten thousand dollars was obtained on the pledge of the corporate capacity of the Excelsior Company and plaintiffs concurred in that pledge. We do not think plaintiffs are entitled to reverse their position to the prejudice of the Screwmen's Association by subjecting funds applicable to their claim to the expense of a receiver, with no function, if appointed, but to turn over to the receiver funds they are content and desirous shall remain in the present custody. In our opinion, both with respect to the other shareholders and the Screwmen's Association, the plaintiffs are estopped from asserting the pretensions advanced in this suit.

In another aspect the plaintiffs' suit for a receivership and injunction can not be maintained. They exhibit no wrong. In this connection it is impressive that they have not paid any part of their stock subscription. They allege they apprehend trouble in the future from engagements that may be formed in the future by the Excelsior Company for which the plaintiffs may be held. The mere possibility of future injuries to the plaintiff seeking a receiver is not deemed sufficient to appoint receivers. With no allegations of mismanagement, misapplication or waste of the funds in respect to which the receivership is claimed, we understand no appointment of receiver in this class of cases is made by the equity courts. High on Receivers, Secs. 17, 11, 14, 288, 293.

The whole case made by the petition was developed on the trial of the rule to appoint the receiver. That and the injunction constituted the relief sought. The issue presented on the rule and the petition was the alleged right to have the corporation or association wound up because of the invalidity of the subscription and the resulting alleged want of corporate capacity. We find no reason for requiring another trial when the judgment on the rule disposes of the controversy and leaves no issue to be determined.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed with costs.